LABORDE, Judge.
This appeal involves an eviction action filed by the City of New Iberia against Exalta Romero, Sr.[1] based on a lease from the City to Romero. The lease covers a strip of land located in the City of New Iberia. The trial court, after sustaining Romero’s exception of thirty (30) years acquisitive prescription, ordered dismissal of the City’s eviction action. The City appeals. We affirm. We find no error in the trial court’s ruling.
On January 14, 1980, the City of New Iberia filed a motion to evict Exalta Romero, Sr. from a strip of land located in New Iberia pursuant to a lease dated May 23, 1972.[2] The City alleged that the lease was for a period of one (1) year and continued from year to year after the primary term.
Romero filed peremptory exceptions of 10 years liberative prescription, 30 years acquisitive prescription, and no right of action. He alleged that the property in question, Wana Alley, acquired by the City on April 3, 1903, was not being used for any public purpose, and had been abandoned by nonuse for a period in excess of ten (10) years. Romero further alleged that on April 26, 1940, he acquired a certain town lot bounded by Wana Alley and since that time had been in uninterrupted possession of that portion of Wana Alley described as “A” on the plat of survey of Alvin C. Ba-deaux, City Engineer, dated March 1972 and attached to the lease.
*549 The City of New Iberia contends that since Romero executed a lease on May 23, 1972, he is a precarious possessor and may not acquire his lessor’s property by prescription. Romero contends that the City has no standing to bring an eviction proceeding since he acquired ownership of the strip of land by 30 year acquisitive prescription pri- or to executing the lease on May 23, 1972.
In his reasons for judgment the trial court concluded that:
“The exception of thirty year acquisitive prescription is sustained, and the City’s eviction action will be dismissed.”
In reaching the conclusion that Romero’s plea of thirty years prescription was well founded, the trial court discussed two basic concepts which must be considered when acquisitive prescription arises involving a public body. We take the liberty of quoting in part from the trial judge’s well-written opinion.

First the state and its political subdivisions have a dual personality. They act as sovereign, and in a private capacity. (LSA-C.C. art. 450 Comments)
Secondly, things under the civil law have been traditionally divided into three categories: Common, public and private. (LSA-C.C. art. 448)
Common things may not be owned by anyone (LSA-C.C. art. 449). Public things are those things which are owned by the state or its political subdivisions in their capacity as public persons. They include such things as streets and squares. (LSA-C.C. art. 450) Private things are things owned by private persons, or by the state or its political subdivisions in their capacity as private persons. (LSA-C.C. art. 453).
Two recent Court of Appeal (Third Circuit) cases recognized these distinctions and hold that acquisitive prescription may run against a public body as to private things it owns, but not as to public things. In the case of Town of Broussard v. Broussard Volunteer Fire Dept., 357 So.2d 25 (1978) the Court held that acquisitive prescription as to the things in question ran against the municipality in favor of the Volunteer Fire Department, as they were private things owned by the City in the capacity of a private person. According to the Court in Broussard, public property to which all inhabitants of a City are entitled in common, such as public streets and walks, is not subject to acquisitive prescription. Public property not used by the people in common, which is used for their benefit by the administrators of the City, is subject to acquisitive prescription.
An immediate precursor to the Brous-sard case was that of Prothro v. City of Natchitoches, 265 So.2d 242, (C. of A.-3, 1972), which was cited by defendant in an attempt to show that prescription does run against a city.
A careful reading of Prothro reveals that the Court impliedly followed the same logic later specifically endorsed in Broussard. The property involved was originally acquired by the City for use in drilling water wells. Such a use falls into the category of administrative use defined in Broussard. As such, the property could not be considered “hors de commerce”, and insusceptible of prescription, and the Court decided that the prescription did run against the City.
As previously discussed, a street is a public thing owned by a political body in its capacity as a public person (LSA-C.C. art. 450, supra) and is consequently not susceptible of prescription. Both Proth-ro, and Broussard, supra, cited by defendant, are accordingly distinguishable from the instant matter in the sense that the property in dispute here was acquired by the plaintiff for use as a public street, but indistinguishable in the sense that the said property has not been put to use as a public street since at least 1940, and probably never was.[3] Indeed, the first evidence of any use at all by the City is its lease to defendant in 1972. This certainly demonstrates an intention to own as a *550 private person, to put to administrative use, and not for the use of the people in common. In fact, the lease spells out that the property was not then being used for public purposes. The next question, then, is whether a thing acquired by a public body as a public thing but subsequently owned as a private thing is subject to acquisitive prescription. The answer is found in the case of Louisiana Highway Commission v. Raxdale, 12 So.2d 631, C. of A.(2), 1943. In that case, the City of Alexandria had purchased property “as a street of said town”, but had never used it as such, and in fact had never possessed it at all, vendors and their heirs having retained possession up to the time of the litigation. The argument was made that the property was a public acquisition and not subject to acquisitive prescription. The Court, relying on the principles announced above and on former LSA-C.C. art. 482, at page 635 ruled in effect that regardless of the character of the acquisition, if the thing is never used, or ceases to be used, as a public thing, it takes on the character of alienability and becomes subject to prescription. Former LSA-C.C. art. 482 (now arts. 449, 450 and 455 provides, inter alia, that things naturally susceptible of ownership but applied to some public purpose, resume their original quality as soon as they cease to be applied to such public purpose; and gives as examples of such things highways, roads, streets and public places. The Court of Appeal, Third Circuit, by whose decisions the undersigned is bound, quoted in Prothro the following language of the district court therein:
‘In the case of Louisiana Highway Commission v. Raxdale, (La.App.) 12 So.2d (631) 633 (2nd Cir. 1943) the court stated that the deed to the Town of Alexandria contained this clause: “and purchased as a street of the said town of Alexandria.” The court found that there was no dedication of such area to public use and therefore it was not “common property.” The property in the instant case was acquired by the City in 1845 some 126 years ago. It was never in the history of man in the City’s possession or under its dominion. This court does not believe the property was ever in the category of “common property” but even had it been when purchased it had long since ceased to have this quality. See L.C.C. Art. 482.’
The Third Circuit panel in Prothro went on to say that it agreed with the finding of the trial judge that the property in dispute in that case was subject to acquisition by prescription, and in doing gave its nod of approval to the holding in Raxdale.
A remaining question on acquisitive prescription is whether the running of prescription is defeated by part of the property granted in 1903 being used as a public thing, since the evidence is that approximately half of it is being used by the public. The evidence is silent as to how long that part has been used by the public, but for purposes of argument, let us assume that it has been continuously since 1903. Such argument would not avail the City, because when the City uses a private thing, it is in the same position as a private person. Just as a private person is susceptible of losing only part of a piece of property through acquisitive prescription (by whatever method and for whatever reason), so is the City. In accordance with former LSA-CC art. 482, when any (part of whole) things naturally susceptible of ownership retains or resumes that quality, it may be prescribed against. The undersigned is aware of no authority to the contrary.
The evidence is clear and undisputed that defendant possessed adversely the property in dispute continuously from 1940 in such a manner as to acquire by prescription, until 1972. Thirty years had run prior to 1972, so the execution of the lease by defendant, whatever he thought he was signing (he testified he thought it was some sort of partition agreement), is of no moment.
Neither can it be said that defendant renounced his acquisition through prescription by entering into the 1972 lease, thereby acknowledging ownership in plaintiff. The law is clear that such a *551 renunciation must be express, absolute and unequivocal, and be so clear that it leaves no room for contrary interpretation.[4] Porter-Wadley Lumber Co. et al. v. Bailey, 110 F.2d 974, USCCA(5), 1940; A. M. Ross v. Harvey Adams, 23 La.Ann. 621 (1871); Reconstruction Finance Corp. v. Ardillo, 200 So. 687 (1941); LSA-CC arts. 3460, 3461; Traite Theorique et Pra-tique de Droit Civil, Vol. XXVIII, Nos. 1-815, at pages 44 — 45, Baudry — Lacantin-erie & Tessier. That is obviously not the case here.”
We find the trial judge’s scholarly analysis of the instant case to be fully supported by the record.
For the above and foregoing reasons the judgment of the trial court is affirmed. Appellant, City of New Iberia, is taxed all costs of this appeal in the amount of $_ as provided by law, LSA-R.S. 13:4521, 13:5112.
AFFIRMED.
APPENDIX I
STATE OF LOUISIANA
PARISH OF IBERIA
LEASE
This lease is made and entered into by and between the City of New Iberia, herein represented by J. Allen Daigre, Mayor, hereinafter sometime referred to as Lessor and Exalta Romero, Sr. residing at 915 Walton Street, New Iberia, Louisiana, hereinafter referred to as Lessee.
Lessor does hereby lease to Lessee a portion of Wana Alley as shown on plat annexed hereto and made part hereof, which alley is not presently being used for public purposes.
This lease is for a term of one (1) year from date hereof and shall continue from year to year thereafter. However, Lessor has a right to cancel his lease in full at any time upon his giving thirty (30) days written notice to Lessee at the address shown herein below. Lessee agrees to pay to Lessor the sum of ONE AND NO/100 ($1.00) DOLLAR per year as consideration of this lease.
Lessor shall not be liable for any injury to person or damage to property sustained by Lessee or any other persons and any such liability is assumed by Lessee. Upon termination of this lease, Lessee binds and obligates himself to remove all buildings and improvements from said leased premises.
THUS DONE AND SIGNED in New Iberia, Louisiana, this 23rd day of May, 1972.

*552

. Exalta Romero, Sr. died June 15, 1980. Blanch Romero, his widow, executrix of his estate is the voluntary appellee pursuant to Rule 13, Section 1 of the Uniform Rules of the Courts of Appeal.

. The lease and plat of survey are attached as appendix 1.

. The trial court’s entire opinion indicates that the words “distinguishable” and “indistinguishable” were mistakenly transposed in this sentence.

. Our recent case of McPherson v. Roy, 390 So.2d 543 (La.App. 3rd Cir. 1980), likewise holds that, "... a renunciation to be effective must be unequivocal and takes place only when the intent to renounce is clear, direct and absolute and made manifest either by words or actions of the party in whose favor prescription has run. ...”